No. 23-5770

# In the United States Court of Appeals for the Sixth Circuit

———————————

CITY OF PIKEVILLE,

*Plaintiff-Appellant*,

v.

CEBRIDGE ACQUISITION LLC; CEQUEL III COMMUNICATIONS II, LLC, D/B/A SUDDENLINK COMMUNICATIONS; ALTICE USA INC.,

*Defendants-Appellees*.

———————————

On Appeal from the United States District Court
for the Eastern District of Kentucky, Southern Division
Case No. 7:22-cv-00064-DLB-CJS

———————————

## OPENING BRIEF FOR APPELLANT CITY OF PIKEVILLE

———————————

JONATHAN F. MITCHELL
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Appellant City of Pikeville*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 23-5770 _____    Case Name: City of Pikeville v. Cebridge Acquisition, L

Name of counsel: Jonathan F. Mitchell _____

Pursuant to 6th Cir. R. 26.1, City of Pikeville _____
*Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

CERTIFICATE OF SERVICE

I certify that on _____ December 15, 2023 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Jonathan F. Mitchell _____

Counsel for Appellant City of Pikeville _____

_____

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

Disclosure statement...................................................................i

Table of contents ......................................................................ii

Table of authorities ..................................................................iv

Statement regarding oral argument ..........................................v

Statement of jurisdiction ...........................................................1

Statement of the issues..............................................................3

Standard of review ....................................................................4

Statement of the case ................................................................4

    I.    Facts ............................................................................5

    II.    Procedural history.................................................... 12

Summary of the argument....................................................... 16

Argument................................................................................ 19

    I.    The city alleged that Cequel breached its contractual obligations ..... 19

        A.    The city's breach-of-contract claim rests solely on Cequel's failure to pay liquidated damages, so there is no need for the complaint to specify the "underlying" breaches that caused the city commission to invoke the liquidated-damages clause ......................................20

        B.    Even if the city were litigating the "underlying" breaches in federal court, a complaint is not required to list every discrete contractual provision that a defendant breached........ 25

        C.    Even if it were necessary for the city's complaint to specify every provision in the franchise ordinance that cequel breached, the city did so by attaching and referring to an exhibit that listed each provision that Cequel violated and explained how the breach occurred ..................... 29

    II.    The district court erred in holding that the city's indemnification claim required an allegation or finding of breach ......31

III.    The district court erred by dismissing the city's claims with prejudice and denying the city's request for leave to amend ............ 32

Conclusion ................................................................................... 34

Certificate of compliance ............................................................. 35

Certificate of service ................................................................... 36

Addendum ....................................................................................

# TABLE OF AUTHORITIES

**Cases**

*Amini v. Oberlin College*, 259 F.3d 493 (6th Cir. 2001) ........................................ 19, 31

*Archambeault v. Wyndham Vacation Ownership, Inc.*,
   2021 WL 6496827 (M.D. Tenn. July 14, 2021) .................................................. 29

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................... 26

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................18, 26, 27

*Caterpillar Inc. v. Lewis*, 519 U.S. 61 (1996) ............................................................... 3

*Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003 (6th Cir. 2009) ...................... 2

*Erickson v. Pardus*, 551 U.S. 89 (2007) ..................................................................... 26

*Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005) (en banc) ............................................... 4

*Kaminski v. Coulter*, 865 F.3d 339 (6th Cir. 2017) ...................................................... 4

*Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012) ................................................... 26

*Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921 (2019) ............... 5, 29

*Newberry v. Silverman*, 789 F.3d 636 (6th Cir. 2015) ................................................ 33

*Rotkiske v. Klemm*, 140 S. Ct. 355 (2019) ................................................................. 16

*Stewart v. IHT Insurance Agency Group, LLC*,
   990 F.3d 455 (6th Cir. 2021) ......................................................................33, 34

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) .................................................. 27

*Weiner v. Klais & Co.*, 108 F.3d 86 (6th Cir. 1997) ................................................... 30

**Statutes**

28 U.S.C. § 1291.............................................................................................................3

28 U.S.C. § 1331 ............................................................................................................ 1

**Rules**

Fed. R. Civ. P. 10(c) ..................................................................................................... 30

## STATEMENT REGARDING ORAL ARGUMENT

Appellant City of Pikeville respectfully requests oral argument, as the issues in this case are sufficiently important and complex to warrant argument time.

The city of Pikeville ("city") entered into a franchise agreement with Cequel III Communications II LLC ("Cequel"), which gave Cequel a non-exclusive 10-year franchise to provide cable television in the city. This agreement contains a liquidated-damages clause that requires Cequel to pay a specified amount if the city commission, after holding a public hearing, finds by majority vote that Cequel breached the agreement and issues a written decision ordering payment of liquidated damages as a remedy. *See* Franchise Ordinance § 10(b)(4), R. 1-2, Page ID # 27.

When Cequel's services deteriorated, the city commission invoked the liquidated-damages clause, held a public hearing, and issued findings that Cequel had breached numerous provisions of its franchise agreement with the city. *See* Resolution, R.1-7, Page ID # 78–86. The commission also issued a written decision ordering payment of liquidated damages as set forth in the franchise agreement. *See* Resolution, R.1-7, Page ID # 86–89. When Cequel refused to pay those liquidated damages, the city sued Cequel in federal district court for breaching its contractual obligation to pay liquidated damages in response to the city commission's order. The district court dismissed the city's claims under Rule 12(b)(6) for failing to allege a breach, and entered judgment for the defendants. The city is now appealing to this Court.

## STATEMENT OF JURISDICTION

The district court's jurisdiction rests on 28 U.S.C. § 1332 because the plaintiff and defendants are citizens of different states and the amount in

controversy exceeds $75,000.00. The city of Pikeville, the sole plaintiff in this case, is a municipality incorporated under the laws of Kentucky.[1]

There are three defendants in this case, and none of them are citizens of Kentucky. The first defendant, Cebridge Acquisition LLC, is a Delaware limited liability whose sole member is Cequel Communications III LLC. Cequel Communications III LLC is a Delaware limited liability company whose sole member is Cequel Communications LLC. Cequel Communications LLC is a Delaware limited liability company whose sole member is CSC Holdings LLC. CSC Holdings LLC is a Delaware limited liability company whose sole member is Cablevision Systems Corporation. Cablevision Systems Corporation is a Delaware corporation and has its principal place of business in New York. *See Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) (limited liability companies are not "corporations" under 28 U.S.C. § 1332(c)(1) and take the citizenship of each of their partners or members).[2]

The second defendant, Cequel III Communications II LLC, is a Delaware limited liability company whose sole member is Cebridge Connections Inc. Cebridge Connections Inc., in turn, is a Delaware corporation with its principal place of business in New York.[3] The third defendant, Altice USA Inc., is a Delaware corporation with its principal place of business in New

---

1.   *See* First Amended Complaint, R. 36, Page ID # 230 (¶ 2).

2.   *See* First Amended Complaint, R. 36, Page ID # 230–231 (¶ 3).

3.   *See* First Amended Complaint, R. 36, Page ID # 231 (¶ 4).

York. So there is complete diversity between the parties. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).[4]

The appellate jurisdiction of this Court rests on 28 U.S.C. § 1291 because the plaintiff is appealing a final judgment. *See* Judgment, R. 42, Page ID # 309. The district court entered its judgment on August 15, 2023, and the plaintiff filed its notice of appeal on August 25, 2023. *See* Notice of Appeal, R. 43, Page ID # 310.

The appeal is from an order and final judgment that adjudicated all of the claims with respect to all parties, and no parties or issues remain in the district court.

## STATEMENT OF THE ISSUES

1. The city of Pikeville sued Cequel for breaching a franchise agreement between the city and Cequel, but the district court dismissed the city's claims after holding that the complaint had failed to allege a breach. The issue presented is:

> Did the district court err in holding that the city's complaint failed to allege a breach?

2. The city of Pikeville sued Cequel under the indemnification clause of their franchise agreement, which requires Cequel to indemnify the city for any "losses" that arise from Cequel's "execution, performance or breach" of the franchise. *See* Franchise Ordinance § 7(b), R. 1-2, Page ID # 21. The district court dismissed this claim because it held that the city had failed to al-

---

4.    *See* First Amended Complaint, R. 36, Page ID # 231 (¶ 5).

lege breach, even though a breach of contract is not necessary to trigger Cequel's duty to indemnify. The issue presented is:

> Did the district court err in holding that the city's indemnification claim required an allegation or finding that Cequel had breached the franchise agreement?

3. After granting the defendants' motion to dismiss under Rule 12(b)(6), the district court dismissed the city's claims with prejudice, rather than dismissing without prejudice and allowing the city an opportunity to re-plead, even though the city had asked the district court for an opportunity to amend in the event of dismissal. The issue presented is:

> Did the district court abuse its discretion by dismissing the city's claims with prejudice and denying the city's request for leave to amend?

## STANDARD OF REVIEW

The decision granting the Rule 12(b)(6) motion is reviewed de novo. *See Kaminski v. Coulter*, 865 F.3d 339, 344 (6th Cir. 2017) ("We review a district court's ruling on a Rule 12(b)(6) motion *de novo*."). The district court's decision to dismiss the city's claims with prejudice rather than without prejudice is reviewed for abuse of discretion. *See Ernst v. Rising*, 427 F.3d 351, 366 (6th Cir. 2005) (en banc) ("A district court's decision to dismiss a claim with prejudice or without it receives abuse-of-discretion review.").

## STATEMENT OF THE CASE

Because the proceedings in this case are still at the motion-to-dismiss stage, a court must assume the truth of the plaintiff's factual allegations. *See*

*Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1927 (2019) ("Because this case comes to us on a motion to dismiss, we accept the allegations in the complaint as true."). We will therefore recite the facts as alleged in the first amended complaint, which must be assumed true for purposes of this appeal. *See* First Amended Complaint, R. 36.

## I.   Facts

On September 14, 2009, the city of Pikeville ("city") granted Cequel III Communications II LLC ("Cequel")[5] a non-exclusive 10-year franchise to provide cable television in the city. *See* First Amended Complaint, R. 36, Page ID # 231–232. The city commission adopted a resolution announcing its acceptance of Cequel's proposal, which stated:

> [T]he City of Pikeville, pursuant to Ordinance No. 0-2009-022, has created a non-exclusive franchise not to exceed ten (10) years for a cable television system to operate within the confines of the City of Pikeville.

Resolution, R. 1-1, Page ID# 10.

Ordinance No. 0-2009-022, in turn, sets forth the terms and conditions of the city's agreements with its franchisees, and serves as a binding contract between the city and Cequel. *See* Franchise Ordinance, R. 1-2, Page ID # 11–

---

5.   The d/b/a name of Cequel III Communications II LLC is "Suddenlink Communications." For simplicity and consistency, we will refer to this entity as "Cequel" throughout the brief. Some of the exhibits and district-court filings use the name "Suddenlink" to refer to Cequel or to the three defendants collectively.

51. Section 10 of the franchise ordinance is entitled "LIQUIDATED DAMAGES," and it reads as follows:

(a) For violation of any of the following provisions of this Ordinance, liquidated damages may be recoverable from the letter of credit or performance bond as follows:

(1) For failure to complete construction and installation of the system or complete line extensions in accordance with this Ordinance and the Grantee's application as incorporated herein, unless the City Commission specifically approves the delay by resolution or because of reasons beyond the control of the Grantee, Grantee shall forfeit five hundred dollars ($500.00) per day or part thereof that the violation continues.

(2) For failure to comply with Section 22, Grantee shall forfeit two hundred dollars ($200.00) per day or part thereof that the violation continues.

(3) For failure to comply with any other provisions of this Ordinance, Grantee shall forfeit one hundred dollars ($100.00) per day or part thereof that the violation continues.

(b) Before the Government may assess any liquated damages under this section and before any sums are withdrawn from the letter of credit or performance bond, the Government shall give the Grantee written notice and an opportunity to be heard in accordance with the following procedure:

(1) The Government shall notify the Grantee, in writing, of an alleged failure to comply with the provisions of this Ordinance as outlined in Section 10(a), which notice shall specify the alleged failure.

(2) The Grantee shall, within fifteen (15) days after receipt of the notice, either cure the alleged failure or, in a written response to the City Commission, either present facts and arguments in refutation or excuse of such alleged failure or

state that the alleged failure will be cured and set forth the method and time schedule for accomplishing such cure.

(3) If the Grantee fails to cure and/or fails to notify the Government as provided in the preceding paragraph within fifteen days, the City Commission shall hold a public hearing to determine whether or not any violation has occurred. Notice of such public hearing shall be sent out not less than seven (7) nor more than twenty-one (21) days before the public hearing

(4) Following the public hearing and a majority vote of the City Commission finding that a failure to comply with a provision of the franchise has occurred, the City Commission may issue a written decision ordering liquidated damages in accordance with this section.

(c) Except as provided in federal law, Grantee shall not be excused from complying with any of the terms and conditions of this Ordinance by any failure of the Government, upon any one or more occasions, to insist upon the Grantee's performance or to seek Grantee's compliance with any one or more of such terms or conditions. Payment of liquated damages shall not excuse nonperformance under this Ordinance.

Franchise Ordinance, R. 1-2, Page ID # 26–27.

In 2015, Altice S.A. entered into a merger agreement with Cequel's parent corporation (Cequel Corporation), which allowed subsidiaries of Altice S.A. to acquire 70% of the equity in Cequel's corporate parent. *See* First Amended Complaint, R. 36, Page ID # 232. On June 28, 2018, Altice USA Inc. ("Altice") gave the city of Pikeville notice of "a pro forma internal reorganization," which reaffirmed that Cequel "still holds the cable service franchise in the City (the 'Franchise') and is bound by its terms, which are unchanged by the Restructuring." *Id*.

Cequel's service in Pikeville began to deteriorate after the merger. *See* First Amended Complaint, R. 36, Page ID # 232–234. On June 23, 2020, the mayor of Pikeville sent a five-page letter to Altice notifying it of Cequel's failure to comply with the franchise ordinance. *See* Written Notice, R. 1-3, Page ID # 59–63. The letter declared that it was being sent "pursuant to Section 10(b)" of the ordinance,[6] and announced that it was giving Cequel "written notice of its failure to comply with the following sections of the Franchise[.]" Written Notice, R. 1-3, Page ID # 59. It then proceeded to list sixteen separate provisions of the franchise ordinance that Cequel had breached, explaining in detail how each of them had been violated. *See* Written Notice, R. 1-3, Page ID # 59–63 (accusing Cequel of violating sections 7(b), 8(1), 9(e), 13(a), 16(a), 22(a), 22(c), 22(e), 22(g), 23(a)(2), 23(a)(3), 23(b)(2), 23(b)(5), and 24(d) of the franchise ordinance and explaining those violations). The letter closed with the following warning:

> Please be advised that Suddenlink shall, within fifteen (15) days after receipt of this letter, . . . either cure the alleged failure or, in a written response to the City Commission, either present facts and arguments in refutation or excuse of such alleged failure or state that the alleged failure will be cured and set forth the method and time schedule for accomplishing such cure. **If Suddenlink fails to cure and/or fails to notify the City as provided above within fifteen days, the City Commission shall hold**

---

6. Written Notice, R. 1-3, Page ID # 59; *see also id.* ("Before the City may assess any liquated damages under Section 10 and before any sums are withdrawn from the letter of credit or performance bond, the City shall give the Grantee written notice and an opportunity to be heard in accordance with Section 10(b) of the Franchise.").

> **a public hearing to determine whether or not any violation
> has occurred.** Notice of such public hearing shall be sent out
> not less than seven (7) nor more than twenty-one (21) days be-
> fore the public hearing.

Written Notice, R. 1-3, Page ID # 63 (emphasis in original). The letter also

notified Cequel of the city's "intent to access liquidated damage[s] if said

failures to comply with the Franchise are not cured." Written Notice, R. 1-3,

Page ID # 59.

On July 8, 2020, Altice wrote back to the mayor. *See* Letter, R. 1-4, Page

ID # 64–70. In its letter, Altice either denied the accusations of breach or

claimed to "cure" the breaches in its letter responding to the city's accusa-

tions. *See id.*; *see also* Letter, R. 1-4, Page ID # 64 ("By this letter, Altice re-

spectfully denies the City's allegations of failure to comply with the Cable

Ordinance, and/or in the alternative, hereby cures said allegations, based on

the responses provided herein.").

On June 17, 2020, the city published a notice of public hearing to deter-

mine whether Cequel had breached its obligations in the franchise ordinance.

*See* Notice of Public Hearing, R. 1-5, Page ID # 71. The notice scheduled the

public hearing for June 28, 2020, at 6:00 P.M., *see id.*, although the city later

rescheduled the hearing for July 27, 2020, and issued a fresh notice of public

hearing on July 15, 2020. *See* Resolution, R. 1-7, Page ID # 78. All of this was

done in accordance with section 10(b)(3) of the franchise ordinance, which

requires "a public hearing to determine whether or not any violation has oc-

curred," and requires notice of the hearing to be "sent out not less than sev-

en (7) nor more than twenty-one (21) days before the public hearing." Franchise Ordinance, R. 1-2, Page ID # 27.

On July 27, 2020, Altice submitted its "written comments" for the hearing that would be held later that day, once again denying any breach of the ordinance and insisting that it had already cured the problems that previously arose. *See* Letter, R. 1-6, Page ID # 72–74; *see also* Letter, R. 1-6, Page ID # 72 ("Altice has complied in material respects with each of the Ordinance terms or has taken actions where appropriate to cure any issues, as permitted by the Ordinance.").

At the hearing of July 27, 2020, the city commissioners, after hearing evidence, found that Cequel had failed to comply with the requirements of the franchise ordinance. *See* First Amended Complaint, R. 36, Page ID # 235. The city commission also adopted a resolution declaring Cequel in breach and ordering the payment of liquidated damages, consistent with section 10(b)(4) of the franchise ordinance.[7] *See* Resolution, R.1-7, Page ID # 75–91.

The resolution recited each of the relevant provisions in section 10 of the franchise ordinance. *See* Resolution, R.1-7, Page ID # 76–77. The resolution also explained how the city had complied with each of the procedures set forth in section 10(b) for determining whether Cequel breached the franchise

---

7.    *See* Franchise Agreement, § 10(b)(4), R.1-2, Page ID # 27 ("Following the public hearing and a majority vote of the City Commission finding that a failure to comply with a provision of the franchise has occurred, the City Commission may issue a written decision ordering liquidated damages in accordance with this section.").

agreement—a determination that automatically triggers Cequel's obligation to pay liquidated damages under section 10(b)(4).[8] *See* Resolution, R.1-7, Page ID # 76–78.

Then the resolution listed each of the 16 provisions in the franchise ordinance that Cequel had breached, and explained how Cequel had breached each of those 16 provisions. *See* Resolution, R.1-7, Page ID # 77–86 (explaining how Cequel had breached sections 7, 8(a), 8(b), 9(e), 16(a), 22(a), 22(c), 22(e), 22(g), 23(a)(2), 23(a)(3), 23(b)(2), 23(b)(5), 23(c)(3), 23(c)(4), and 24(d) of the franchise agreement). It then announced Cequel's default and ordered the payment of liquidated damages:

> Section 2. Because of its failure comply to with Section 7, Section 8(a), Section 8(b), Section 9(e), Section 16(a), Section 22(a), Section 22(c), Section 22(e), Section 22(g), Section 23(a)(2), Section 23(a)(3), Section 23(b)(2), Section 23(b)(5), Section 23(c)(3) and Section 23(c)(4) of the Ordinance, as outlined above, Suddenlink is in default of its obligations under the terms of the cable franchise agreement between the City and Suddenlink and the City Commission hereby issues this written decision ordering liquidated damages in accordance with Section 10(b)(4) of the Ordinance.
>
> Section 3. Pursuant to Section 10(a)(2) of the Ordinance, for Suddenlink's failure to comply with of Section 22(a) of Ordinance, liquidated damages are hereby assessed and are recoverable as of the date of this Resolution from the letter of credit in the amount of two hundred dollars ($200.00) per day or part thereof that the violation continues.

---

8.    *See* note 7, *supra*.

Resolution, R.1-7, Page ID # 86–87. Sections 4 through 6 of the resolution re-
semble section 3 quoted above, and they order additional payments in liqui-
dated damages of $200/day for each of Cequel's failures to comply with sec-
tions 22(b), 22(e), and 22(g) of the franchise ordinance. *See* Resolution, R.1-
7, Page ID # 87. Sections 6 through 16 of the resolution[9] order payments in
liquidated damages of $100/day for each of Cequel's failures to comply with
sections 7, 8(a), 8(b), 9(e),[10] 16(a), 23(a)(2), 23(a)(3), 23(b)(2), 23(b)(5),
23(c)(3) and 23(c)(4). *See* Resolution, R.1-7, Page ID # 87–89.

When Cequel refused to pay these liquidated damages, the city sued
Cequel for breaching its contractual obligation to pay those liquidated dam-
ages, as required by section 10(b)(4) of the franchise ordinance.

## II.   Procedural History

The city sued three defendants: Cequel, Cebridge Acquisition LLC
("Cebridge"), and Altice USA Inc. ("Altice"). The city also asserted three
claims. Count 1 sought a declaratory judgment that the city of Pikeville is
owed the liquidated damages described in the franchise ordinance and the
city's resolution of July 27, 2020, as well as an injunction that would restrain
Cequel from continuing to breach its obligations under the franchise ordi-

---

9.   There is a numbering error in the resolution as there are two section 6s,
     each of which orders payment of a different quantity of liquidated dam-
     ages for breach of a different provision in the franchise ordinance. *See*
     Resolution, R.1-7, Page ID # 87–88.

10.  In what appears to be a typo, section 9 of the resolution refers to a fail-
     ure to comply with "Section 9(c) of the Ordinance," rather than a failure
     to comply with section 9(e). *See* Resolution, R.1-7, Page ID # 88.

nance. *See* First Amended Complaint, R. 36, Page ID # 236 (¶¶ 30–34). Count 2 asserted a breach-of-contract claim to recover the liquidated damages that the city is owed. *See* First Amended Complaint, R. 36, Page ID # 236 (¶¶ 35–40). And Count 3 sought to recover the city's attorneys' fees under the indemnity clause in section 7(b) of the franchise ordinance, which requires Cequel to:

> indemnify, hold harmless, and defend the Government from any and all losses or claims of whatever kind that arise from or are alleged to have arisen, directly or indirectly, in whole or in part from the execution, performance or breach of this franchise by Grantee, its employees, agents, servants, owners, principals, lessees, contractors and subcontractors, excluding negligence and misconduct on the part of the Government.

Franchise Ordinance § 7(b), R. 1-2, Page ID # 21. The city claimed that its "losses" that "arise from" from Cequel's "breach" include the attorneys' fees that the city incurred (and continues to incur) while litigating this breach-of-contract suit in federal court, and that Cequel must therefore indemnify the city for these costs and attorneys' fees under section 7(b) of the franchise ordinance. *See* First Amended Complaint, R. 36, Page ID # 237 (¶¶ 41–45).

The defendants moved to dismiss the claims against Altice for lack of personal jurisdiction, and they moved to dismiss all three claims for failing to state a claim on which relief may be granted. *See* Motion to Dismiss, R. 38, Page ID # 242–259. The district court granted the motion to dismiss in full. *See* Opinion and Order, R. 41, Page ID # 286–308. The district court first

dismissed the claims against Altice for lack of personal jurisdiction. *See* Opinion and Order, R. 41, Page ID # 288–296. The city is not appealing that portion of the district court's ruling. Then the district court dismissed the claims against Altice and Cebridge because neither of those entities is party to the city's franchise agreement, so they cannot be sued for breach of contract or indemnity. *See* Opinion and Order, R. 41, Page ID # 300–302. The city is not appealing this part of the district court's ruling either.

Finally, the district court held that the city had failed to state a claim against Cequel because it claimed the city had never alleged that Cequel breached a contractual obligation. *See* Opinion and Order, R. 41, Page ID # 303–307; *see also* Opinion and Order, R. 41, Page ID # 303 ("The Court . . . finds that the City has failed to allege breach, a necessary element of their claims."). Even though the complaint repeatedly accuses Cequel of "violating"[11] the franchise ordinance and "breaching"[12] its agreement with the city, the district court nonetheless held that breach had *not* been alleged. The district court reached this conclusion because it insisted that the complaint must specify the exact provisions of the franchise ordinance that Cequel had breached. *See* Opinion and Order, R. 41, Page ID # 305 (criticizing the complaint because it does not "reference[] a single provision of the franchise that has been violated, outline[] what the Ordinance requires, or [] how any conduct violates those requirements." (citation and internal quotation marks

---

11.  *See* note 18, *infra*.
12.  *See* note 19, *infra*.

omitted)). And the district court further held that the city could not rely on the exhibits attached to the complaint, such as the written notice that the city sent to Cequel on June 23, 2020,[13] or the city commission's resolution of July 27, 2020—even though these exhibits not only specify which provisions were breached but also explain how they were violated.[14] *See* Opinion and Order, R. 41, Page ID # 305 ("[T]hey may rely on attachments and exhibits to help bear that burden, but the Complaint itself must separately present the allegations."). The district court also dismissed the city's indemnification claim against Cequel by asserting that the indemnification clause "requires a finding of breach, which, for the reasons already discussed, has not been adequately alleged." Opinion and Order, R. 41, Page ID # 307.

Then the district court denied the city an opportunity to amend and dismissed the claims with prejudice,[15] even though its ostensible basis for dismissing the claims against Cequel was a failure to plead sufficient factual detail—and even though the city's brief had explicitly requested leave to amend in the event of dismissal. *Compare* Brief Opposing MTD, R. 39, Page ID # 270 ("[I]f this Court does determine that Plaintiff's Complaint is defective in some manner set forth by Defendants' Motion, and that defect is curable, then Plaintiff respectfully requests leave to amend, which should be freely given when justice requires. Fed. R. Civ. P. 15(a)."). The district court en-

---

13.   *See* Written Notice, R. 1-3, Page ID # 59–63.

14.   See Resolution, R. 1-7, Page ID # 75–91.

15.   *See* Opinion and Order, R. 41, Page ID # 307–308.

tered final judgment for the defendants,[16] and the city filed a timely notice of appeal.[17]

## SUMMARY OF THE ARGUMENT

The city needs only to *allege* and not prove a breach at this stage of the litigation—and every allegation in the city's complaint must be assumed true. *See Rotkiske v. Klemm*, 140 S. Ct. 355, 359 n.1 (2019) ("Because this case comes to us from a decision granting a motion to dismiss, we assume the truth of the facts alleged in [the] operative complaint."). The complaint did exactly that when it accused Cequel of "violating"[18] the franchise ordinance and "breaching"[19] its agreement with the city. The district court was obligat-

---

16.  *See* Judgment, R. 42, Page ID # 309.

17.  *See* Notice of Appeal, R. 43, Page ID # 310.

18.  *See* Amended Complaint, R. 36, Page ID # 230 (¶ 1) ("This dispute concerns Suddenlink's failure to pay amounts owed for uncured and unpaid *violations* of Ordinance # 0-2009-022" (emphasis added)); Amended Complaint, R. 36, Page ID # 235 (¶ 28) ("Pikeville adopted a resolution finding that Suddenlink *violated the ordinance* and owed liquidated damages. The resolution is attached as Exhibit 7." (emphasis added)); Amended Complaint, R. 36, Page ID # 235 (¶ 29) ("Suddenlink failed to pay the liquidated damages."); Amended Complaint, R. 36, Page ID # 236 (¶ 33) ("Plaintiff seeks a declaration that due to Suddenlink's *violations of the ordinance* Suddenlink must pay Plaintiff liquidated damages as set forth in Exhibit 7." (emphasis added)); Amended Complaint, R. 36, Page ID # 236 (¶ 40) ("As a direct, proximate, and legal result of Suddenlink's *violation of the ordinance*, Plaintiff is owed liquidated damages." (emphasis added)).

19.  *See* Amended Complaint, R. 36, Page ID # 236 (¶ 31) ("An actual controversy exists between Defendants and Plaintiff concerning the payments for the *breach of the franchise*." (emphasis added)); Amended

ed to accept the truth of these allegations, and that means the city alleged a breach. The district court erred in holding otherwise.

For good measure, the city's complaint went on to explain exactly how Cequel had breached its contractual obligations: By failing to pay the liquidated damages that were triggered by the city commission's finding of default:

> Pikeville adopted a resolution finding that Suddenlink violated the ordinance and owed liquidated damages. . . . Suddenlink failed to pay the liquidated damages. As of the filing of this Amended Complaint, Suddenlink owes over $1,200,000 in liquidated damages, which damages accrue daily.

Amended Complaint, R. 36, Page ID # 235 (¶¶ 28–29). That is the *only* alleged breach of the franchise ordinance the city seeks to litigate in federal court. The so-called "underlying breaches" that caused the city commission to declare Cequel in default have already been considered and adjudicated by the city commission. And the city commission's finding of default, which was memorialized in its resolution of July 27, 2020,[20] is all that is needed to trigger Cequel's obligation to pay liquidated damages under section 10 of the franchise ordinance.[21] So the city has no need to relitigate the "underlying"

---

Complaint, R. 36, Page ID # 236 (describing Count II as "*Breach* of Franchise" (emphasis added)).

20.  *See* Resolution, R. 1-7, Page ID # 78–86.

21.  *See* Franchise Ordinance § 10(b)(4) ("Following the public hearing and a majority vote of the City Commission finding that a failure to comply with a provision of the franchise has occurred, the City Commission may issue a written decision ordering liquidated damages in accordance with this section.").

breaches in federal court; it is suing *only* to collect the liquidated damages that Cequel became contractually obligated to pay once the city commission found Cequel in default of the franchise ordinance.

The district court's insistence that the complaint enumerate and describe each of those "underlying" breaches was based on a false premise: that the city needs to allege (and ultimately prove) in court that Cequel actually violated the franchise ordinance in the precise manner that city commission described in its resolution of July 27, 2020. The city, however, needs *only* to prove that Cequel failed to pay liquidated damages after being found in default by the city commission, because the commission alone holds the power to determine whether an "underlying" breach of the franchise ordinance occurred and whether liquidated damages should be ordered in response to that breach. So there is no need for the city to allege anything more than: (1) The existence of a formal finding of default by the city commission and a written decision ordering the payment of liquidated damages as a remedy; and (2) A failure to pay liquidated damages in response to that written order.

That alone warrants reversal of the district court's judgment. But the Court should reverse even if it believes that the city must sue Cequel over its "underlying" breaches of the franchise ordinance, because a complaint is not required to provide the level of factual detail that the district court insisted upon. *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations"). And in all events, the factual details that the dis-

trict court wanted *were* provided in the resolution of July 27, 2020, which the city attached as an exhibit to its complaint, and which carefully and painstakingly explains each of the ways in which Cequel breached its franchise agreement with the city. *See* Resolution, R.1-7, Page ID # 75–91. The district court's refusal to consider the contents of this exhibit violated Rule 10(c), which provides that exhibits to a pleading are "part of the pleading for all purposes," as well as the precedent of this Court. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (reversing district court for refusing to consider information contained in exhibit attached to complaint).

The district court also erred in dismissing the city's indemnification claim on the grounds that the city had failed to allege a breach of contract, because Cequel's duty to indemnify under section 7(b) of the franchise ordinance does not depend on a preexisting breach of the franchise ordinance. *See* Franchise Ordinance § 7(b), R. 1-2, Page ID # 21. Finally, the district court abused its discretion by dismissing the city's claims with prejudice, and by denying the city an opportunity to amend its complaint after dismissal.

## ARGUMENT

### I. The City Alleged That Cequel Breached Its Contractual Obligations

The district court held that the complaint failed to even *allege* a breach of contract, even though the complaint repeatedly accuses Cequel of "violating"[22] the franchise ordinance and "breaching"[23] its agreement with the city.

---

22.   *See* note 18, *supra*.

The district court nonetheless found the city's allegations deficient because it held that the complaint itself must specify and describe the "underlying" breaches of the franchise ordinance that led the city commission to find Cequel in default and order the payment of liquidated damages. *See* Opinion and Order, R. 41, Page ID # 304 (criticizing the complaint because it does not "reference[] a single provision of the franchise that has been violated, outline[] what the Ordinance requires, or [] how any conduct violates those requirements." (citation and internal quotation marks omitted)). The district court's holding is wrong, and it should be reversed for no fewer than three separate and independent reasons.

### A. The City's Breach-Of-Contract Claim Rests Solely On Cequel's Failure To Pay Liquidated Damages, So There Is No Need For The Complaint To Specify The "Underlying" Breaches That Caused The City Commission To Invoke The Liquidated-Damages Clause

The first and most obvious problem with the district court's ruling is that the city has no need to litigate the "underlying" breaches that caused the city commission to declare Cequel in violation of the franchise ordinance. The city's breach-of-contract claim rests *solely* on Cequel's failure to pay liquidated damages, and Cequel's obligation to pay those liquidated damages comes from the brute fact that city commission found Cequel in default and ordered the payment of liquidated damages as a remedy. Section 10(d) of the franchise ordinance makes clear that the city commission alone holds the prerog-

---

23.   *See* note 19, *supra*.

ative to determine whether a violation of the ordinance has occurred, and to decide whether liquidated damages should be ordered as a remedy:

> Following the public hearing and a majority vote of the City Commission finding that a failure to comply with a provision of the franchise has occurred, the City Commission may issue a written decision ordering liquidated damages in accordance with this section.

Franchise Ordinance § 10(d), R. 1-2, Page ID # 27. The city commission exercised this prerogative in its resolution of July 27, 2020, which declared that Cequel had "failed to comply" with numerous provisions of the franchise ordinance and ordered the payment of liquidated damages. *See* Resolution, R.1-7, Page ID # 78–86 (findings of breach); Resolution, R.1-7, Page ID # 86–89 (ordering payments of liquidated damages as a remedy).

The city is *not* suing to re-litigate whether Cequel violated the franchise ordinance in the manner described in the resolution of July 27, 2020. The city commission has already determined that Cequel violated the ordinance, and that determination is what triggered Cequel's contractual obligation to pay liquidated damages. *See* Franchise Ordinance § 10(d), R. 1-2, Page ID # 27. The only "breach" that the city is suing Cequel for is its failure to pay liquidated damages in response to the commission's written order. The "underlying" breaches of the franchise ordinance that led the commission to declare Cequel in default have no bearing on the city's breach-of-contract claim, so they do not need to be specified or described in the complaint. All that matters is that the city commission found Cequel in default and ordered it to pay

liquidated damages, and that Cequel failed to pay the liquidated damages as required by the commission's order and the franchise ordinance.

All of this was explained in the city's district-court brief. *See* Brief Opposing MTD, R. 39, Page ID # 39. Yet the district court nonetheless insisted that it needed to resolve whether Cequel's "underlying" breaches were sufficient to trigger the liquidated damages clause—and that the city therefore needed to allege facts about those underlying breaches and explain how Cequel's violations of the franchise agreement could justify the imposition of liquidated damages:

> To determine whether Cequel violated the franchise, that they owe liquidated damages, and that it is enjoined from further violations, the Court must find and define what a "violation" is. And that is not possible without digging into the franchise agreement, its requirements, and Cequel's conduct. On the facts alleged in the Complaint and in the City's responsive briefing, the Court cannot do that.

Opinion and Order, R. 41, Page ID # 304. None of that is true. The franchise agreement vests the city commission with the power to determine whether a "violation" or breach has occurred—and whether liquidated damages should be ordered as a remedy. *See* Franchise Ordinance § 10(d), R. 1-2, Page ID # 27 ("Following the public hearing and a majority vote of the City Commission finding that a failure to comply with a provision of the franchise has occurred, the City Commission may issue a written decision ordering liquidated damages in accordance with this section."). The district court's job is to determine only: (1) Whether the city commission found a violation and or-

22

dered the payment of liquidated damages; and (2) Whether Cequel fulfilled its contractual obligation to pay liquidated damages in response to the city commission's order. Nothing further needs to be alleged in the complaint, because nothing else is needed to show that Cequel breached its contractual obligation to pay liquidated damages.

The district court seemed to think that the city was attempting to bring "an enforcement action" against Cequel by insisting that the city commission's findings of underlying breach could not be relitigated. *See* Opinion and Order, R. 41, Page ID # 297 ("The City claims that this is merely an enforcement action"); Opinion and Order, R. 41, Page ID # 304 ("All that assumes that the City's reading of its own Complaint is correct, and it is indeed simply an enforcement action."); Opinion and Order, R. 41, Page ID # 305 ("[E]ven if the Board's determination is entitled to deference, it is not clear that the City has an enforceable judgment, [and] fairness considerations counsel against treating as conclusive the judgment of one party in the litigation"). The city is not bringing an "enforcement action," because the city commission is not a court and has no authority to issue judgments with res judicata effect. Nor is the city relying on the doctrine of issue preclusion, which is inapplicable to proceedings before a city commission. The point is simply that the contract itself vested the city commission with authority to determine whether Cequel had breached its requirements and whether liquidated damages should be ordered as a result. And that means the city needs only to allege (and eventually prove) that: (1) The commission found Cequel

23

in default and ordered the payment of liquidated damages; and (2) Cequel breached its contractual obligation to pay the liquidated damages as ordered by the commission. Nothing else is needed to establish a breach-of-contract claim, and the district court erred by insisting that the complaint specify and describe the "underlying" breaches that led the city commission to invoke the liquidated-damages clause.

The district court also spent time discussing whether Cequel could "appeal" the city commission's decision—even though Cequel has made no attempt to appeal in the two and a half years since the city commission's resolution of July 27, 2020. *See* Opinion and Order, R. 41, Page ID # 297–300; *see also* Franchise Ordinance, § 29(b)(1)(F), R.1-2 Page ID #44 ("[Cequel] retains the right relating to any decision or determination under this section or any other provision herein, to appeal to any court or regulatory agency of competent jurisdiction."). Whether Cequel can appeal has no relevance to whether the city has alleged a breach-of-contract claim. The district court thought the possibility of appeal would affect whether the city "possesses a final judgment enforceable by this Court,"[24] but the city is *not* arguing that the resolution of July 27, 2020, constitutes a "final judgment" that can be "enforced" in a judicial forum. The city is suing Cequel for breach of contract, and its claim rests *solely* on the fact that Cequel failed to comply with its

---

24. Opinion and Order, R. 41, Page ID # 298; *see also* Opinion and Order, R. 41, Page ID # 300 ("[A]s long as some appellate process remains available, it is questionable whether the City has any final judgment to present to this Court for enforcement.").

contractual obligation to pay the liquidated damages that the city commission ordered. Cequel is in breach of that contractual obligation—and it will remain in breach for as long as the resolution of July 27, 2020, remains in effect. If Cequel wants to eventually pursue whatever appellate remedies it may have at its disposal, it is welcome to do so. But the hypothetical possibility of a future appeal does not absolve Cequel of its contractual obligation to pay the liquidated damages *now*, and there is nothing in the franchise ordinance that postpones Cequel's duty to pay the liquidated damages ordered by the commission. If Cequel eventually succeeds in appealing and vacating the resolution of July 27, 2020, then it can defeat the city's breach-of-contract claim on the merits. But until that happens, the district court cannot deny that the city has alleged a breach over Cequel's failure to pay the liquidated damages that were imposed.

> **B.    Even If The City Were Litigating The "Underlying" Breaches In Federal Court, A Complaint Is Not Required To List Every Discrete Contractual Provision That A Defendant Breached**

Even if one were to assume or pretend that the city is litigating the "underlying" breaches of the franchise agreement in federal court, the district court was *still* wrong to insist that the complaint specify and describe the particular contractual provisions that were breached and how they were violated. *See* Opinion and Order, R. 41, Page ID # 304 (criticizing the complaint because it does not "reference[] a single provision of the franchise that has been violated, outline[] what the Ordinance requires, or [] how any conduct

violates those requirements." (citation and internal quotation marks omitted)).

A complaint is simply not required to provide that level of detail under a regime of notice pleading. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations"); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" (citation and some internal quotation marks omitted)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations" (citation and internal quotation marks omitted)); *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) ("'Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" (quoting *Erickson*, 551 U.S. at 93)). So long as the complaint plausibly alleges that Cequel breached its contractual obligations with the city—and neither the defendants nor the district court asserts that the city's allegations of breach are "implausible"—then the complaint needs only to provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93; *Twombly*, 550 U.S. at 555 (2007) (same). The complaint easily satisfies that standard by identifying the contract that was breached,[25]

---

25. *See* Amended Complaint, R. 36, Page ID # 232 (¶ 9) (identifying the franchise ordinance as the contract and including it as an exhibit).

explaining that the breach arose from Cequel's failure to pay liquidated damages,[26] and explaining that the obligation to pay liquidated damages arose from the city's commission's resolution of July 27, 2020,[27] which explains each of the "underlying breaches" that undergirds the commission's findings. And if the defendants (or the district court) nonetheless believe that the complaint needs additional details to satisfy the "fair notice" requirement, or if they think the complaint should describe and identify the "underlying" breaches that caused the commission to invoke the liquidated-damages clause, then the remedy is to move for a more definite statement under Rule 12(e), not to dismiss the complaint for failure to state a claim. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding."). Dismissal for insufficient factual detail is appropriate *only* when the absence of specific factual allegations renders the claims "speculative" rather than "plausible,"[28] and neither the defendants nor the district court has ever

---

26. *See* Amended Complaint, R. 36, Page ID # 235 (¶ 29) ("Suddenlink failed to pay the liquidated damages. As of the filing of this Amended Complaint, Suddenlink owes over $1,200,000 in liquidated damages, which damages accrue daily.")

27. *See* Amended Complaint, R. 36, Page ID # 235 (¶ 28) ("Based on the determination by the City Commissioners, Pikeville adopted a resolution finding that Suddenlink violated the ordinance and owed liquidated damages. The resolution is attached as Exhibit 7.").

28. *See Twombly*, 550 U.S. at 555–56 ("Factual allegations must be enough to raise a right to relief above the speculative level").

suggested, let alone argued, that the city's allegations fall on the "speculative" side of the *Twombly*/*Iqbal* divide. Nor could they make such a claim when the factual allegations clearly describe a contractual obligation to pay liquidated damages and a failure by Cequel to fulfill that contractual duty. *See* Amended Complaint, R. 36, Page ID # 235 (¶¶ 28–29). There is nothing "speculative" or "implausible" about that.

Finally, complaints alleging breach-of-contract claims are not required to identify the "specific language" or "the specific contractual promises" that the defendant breached. As a recent district-court decision correctly explained:

> The Complaint alleges the existence of a cognizable contract, a specific term of that contract that was breached, and resulting damages. These allegations show a plausible entitlement to relief. And this is true even though Plaintiffs have not pointed to specific language—the specific contractual promise—in the Use and Occupancy paragraph (or the Declaration to which it refers) that Plaintiffs claim Defendants violated. So an argument based on Plaintiffs' omission of the precise violated contractual language would fail. . . .
>
> Plaintiffs were not required at this stage to identify the precise language upon which they base their assertion of breach, it follows that the Court need not construe that language to see whether it is plausible that, under a proper construction of that language, the jury could find (as a factual matter) that such language was violated. Instead, Plaintiffs have made the factual allegation that the Use and Occupancy Section was breached. And if that factual allegation is true, such that a key element of the breach-of-contract claim would be satisfied, it is at the very least plausible that Plaintiffs have a valid claim for relief on that claim.

> In their Memorandum in Support, Defendants essentially argue only that the breach of contract claim is not specific enough as to what contractual provision allegedly was breached. As stated above, on a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." Defendants have failed to meet their burden.

*Archambeault v. Wyndham Vacation Ownership, Inc.*, 2021 WL 6496827, at *9 (M.D. Tenn. July 14, 2021) (citation omitted). A plaintiff alleging breach of contract needs only to allege that a breach occurred, and allegations of breach must be assumed true at the motion-to-dismiss stage. *See Manhattan Community Access Corp.*, 139 S. Ct. at 1927. A district court cannot deny the truth of the city's allegations of breach by demanding a level of factual detail that neither Rule 8 nor *Twombly* or *Iqbal* require.

### C.    Even If It Were Necessary For The City's Complaint To Specify Every Provision In The Franchise Ordinance That Cequel Breached, The City Did So By Attaching And Referring To An Exhibit That Listed Each Provision That Cequel Violated And Explained How The Breach Occurred

Finally, even if the city were required to specify each provision of the franchise agreement that Cequel breached and explain how Cequel violated those provisions, the district court should *still* be reversed because the city attached its resolution of July 27, 2020, as Exhibit 7 to the complaint—and that resolution provides *all* of the factual details that the district court wanted. *See* Resolution, R.1-7, Page ID # 75–91. The resolution not only lists the 16 provisions of the franchise ordinance that Cequel had violated, it even explains *how* Cequel breached each of those 16 provisions. *See* Resolution, R.1-

7, Page ID # 78–86. It is absurd to suggest that the city's complaint fails to provide Cequel with "fair notice" of the "underlying" breaches when this document was attached to the complaint and is sitting under its nose.

The district court refused to consider the contents of Exhibit 7 and insisted that all relevant factual allegations must appear in the complaint itself. *See* Opinion and Order, R. 41, Page ID # 304–305. The district court's stance runs headlong into Rule 10(c), which it did not cite, and which states in no uncertain terms that:

> A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.

Fed. R. Civ. P. 10(c). And the district court's stance becomes even more untenable when the city's complaint explicitly refers to the resolution of July 27, 2020, and identifies it as an exhibit to the complaint:

> Based on the determination by the City Commissioners, Pikeville adopted a resolution finding that Suddenlink violated the ordinance and owed liquidated damages. The resolution is attached as Exhibit 7.

Amended Complaint, R. 36, Page ID # 235 (¶ 28); *see also Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." (citation and internal quotation marks omitted)).

This Court has reversed district courts that disregard Rule 10(c) and refuse to consider the content of exhibits that the complaint mentions and re-

fers to. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) ("[T]he court erred in failing to consider information contained in Amini's EEOC filing, a document referenced in the complaint and attached thereto."); *id.* (noting that "Amini's EEOC charge clearly was attached to his complaint and referenced therein."). It should do the same here, especially when the attached resolution contains *all* of the factual allegations that the district court wanted to see in the complaint.

## II. The District Court Erred In Holding That The City's Indemnification Claim Required An Allegation Or Finding Of Breach

The district court rejected the city's indemnification claim in a single sentence, asserting that the indemnification claim "requires a finding of breach, which, for the reasons already discussed, has not been adequately alleged." Opinion and Order, R. 41, Page ID # 307. If this Court reverses the district court's holding that the city failed to allege breach, then it should obviously reverse its dismissal of the indemnification claim as well.

But the district court's dismissal of the indemnification claim should be reversed *regardless* of whether this Court concludes that the city alleged breach, because the district court was wrong to hold that the indemnification claim depends on a finding of breach. The indemnification clause says:

> Grantee agrees to indemnify, hold harmless, and defend the Government from any and all losses or claims of whatever kind that arise from or are alleged to have arisen, directly or indirectly, in whole or in part from the ***execution, performance or breach*** of this franchise by Grantee, its employees, agents, servants, owners, principals, lessees, contractors and subcontrac-

tors, excluding negligence and misconduct on the part of the Government.

Franchise Ordinance § 7(b), R. 1-2, Page ID # 21 (emphasis added).[29] The duty to indemnify kicks in whenever the city suffers a loss or claim that arises from Cequel's "execution, performance *or* breach" of the franchise agreement. *Id.* (emphasis added). So a breach is not a precondition of Cequel's duty to indemnify, and Cequel would remain liable if the attorneys' fees that the city lost arose from its mere "execution" or "performance" of the franchise. The district court erred in holding that breach was a necessary condition (rather than a sufficient condition) of the duty to indemnify, and the Court should reverse the dismissal of the city's indemnification claim no matter how it rules on the allegations of breach.

### III. The District Court Erred By Dismissing The City's Claims With Prejudice And Denying The City's Request For Leave To Amend

Even if this Court concludes that the district court properly dismissed the city's claims against Cequel, it should still reverse the judgment because the district court should have afforded the city an opportunity to amend before dismissing its claims with prejudice. This Court has made clear that district courts should allow litigants an opportunity to re-plead whenever there is a "reasonable probability" that the complaint could be salvaged by an amendment:

---

29. The term "Grantee," in the indemnification clause and throughout the franchise ordinance, refers to Cequel.

> In this case, there is a reasonable probability that the complaint
> could have been saved by an amendment. The district court
> therefore erred in not allowing Newberry the opportunity to re-
> quest leave to amend after he received notice that his complaint
> was inadequately pled.

*Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015); *see also Stewart v. IHT Insurance Agency Group, LLC*, 990 F.3d 455, 457 n.* (6th Cir. 2021) ("Dismissal with prejudice and without leave to amend is only appropriate when it is clear on de novo review that the complaint could not be saved by an amendment.").

When a district court dismisses a complaint for failure to plead sufficient factual detail, there will almost always be a "reasonable probability" that an amendment can cure the defective pleadings. That is especially true in a case such as this, where all the necessary factual details appear in an exhibit to the complaint and need only be copied and pasted into the main document. *See* Resolution, R.1-7, Page ID # 78–86 (describing each of Cequel's "underly-ing" breaches). And it is even more true when the city's district-court brief-ing specifically asked for an opportunity to amend in the event of dismissal. *See* Brief Opposing MTD, R. 39, Page ID # 270 ("[I]f this Court does deter-mine that Plaintiff's Complaint is defective in some manner set forth by De-fendants' Motion, and that defect is curable, then Plaintiff respectfully re-quests leave to amend, which should be freely given when justice requires. Fed. R. Civ. P. 15(a)."). It is "reasonably possible"[30] that the city could cure

---

30. *Newberry*, 789 F.3d at 646.

the pleading deficiencies that the district court identified by amending its complaint, and it is not all "clear" that the complaint "could not be saved by an amendment."[31] The district court abused its discretion in denying leave to amend,[32] and this Court should (at the very least) vacate the judgment and allow the plaintiffs another shot at alleging breach in a manner that will satisfy the concerns of the district court.

## CONCLUSION

The judgment of the district court should be reversed, and the case remanded for further proceedings.

Respectfully submitted.

 /s/ Jonathan F. Mitchell 
Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: December 15, 2023                 *Counsel for Appellant City of Pikeville*

---

31. *Stewart*, 990 F.3d at 457 n.*

32. The district court's insistence that the plaintiffs must submit a formal motion for leave to amend under Rule 15 before it will consider a dismissal without prejudice is incompatible with the holding of *Newberry*. *See* Opinion and Order, R. 41, Page ID # 307–308.

## CERTIFICATE OF COMPLIANCE

with type-volume limitation, typeface requirements,
and type-style requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9,085 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it uses Equity Text B 14-point type face throughout, and Equity Text B is a proportionally spaced typeface that includes serifs.

                                                    /s/ Jonathan F. Mitchell
                                                    JONATHAN F. MITCHELL
Dated: December 15, 2023                *Counsel for Appellant City of Pikeville*

## CERTIFICATE OF SERVICE

I certify that on December 15, 2023, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Sixth Circuit and served through CM/ECF upon:

SHANNON A. SINGLETON
MONICA H. BRAUN
Stoll Keenon Ogden PLLC
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507
(859) 231-3000
aj.singleton@skofirm.com
monica.braun@skofirm.com

AMY RICHARDSON
WALTER E. ANDERSON
WILLIAM SULLIVAN
HWG LLP
1919 M Street NW, Eighth Floor
Washington, DC 20036
(202) 730-1300
arichardson@hwglaw.com
wanderson@hwglaw.com
wsullivan@hwglaw.com

*Counsel for Appellees*

 /s/ Jonathan F. Mitchell 
JONATHAN F. MITCHELL
*Counsel for Appellant City of Pikeville*

36

# ADDENDUM

## DESIGNATION OF RELEVANT LOWER-COURT DOCUMENTS

| R. | Description | Page ID # |
|---|---|---|
| 1 | Complaint | 1–9 |
| 1-1 | Resolution Accepting Cequel's Proposal for a Non-Exclusive, 10-Year Franchise | 10 |
| 1-2 | Franchise Ordinance (No. 0-2009-022) | 11–58 |
| 1-3 | Written Notice of Failure to Comply (June 23, 2020) | 59–63 |
| 1-4 | Altice's Response to Written Notice of Failure to Comply (July 8, 2020) | 64–70 |
| 1-5 | Notice of Public Hearing (June 17, 2020) | 71 |
| 1-6 | Altice's Letter to City of Pikeville (July 27, 2020) | 72–74 |
| 1-7 | Resolution of July 27, 2020 | 75–91 |
| 36 | First Amended Complaint | 230–239 |
| 38 | Defendants' Motion to Dismiss the First Amended Complaint | 242–259 |
| 39 | Plaintiff's Brief in Opposition to the Defendants' Motion to Dismiss the First Amended Complaint | 260–272 |
| 40 | Defendants' Reply Brief in Support of their Motion to Dismiss the First Amended Complaint | 273–285 |
| 41 | District Court's Opinion and Order Granting the Defendants' Motion to Dismiss | 286–308 |
| 42 | Judgment | 309 |
| 43 | Notice of Appeal | 310 |